IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNION PACIFIC RAILROAD COMPANY,　§
　　　　　　　　　　　　　　　　　§
　　　　　　　Plaintiff,　　　　§
　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. H-11-0121
　　　　　　　　　　　　　　　　　§
HARRIS COUNTY, TEXAS,　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　Defendant.　　　　§

## MEMORANDUM OPINION AND ORDER

Union Pacific Railroad Company ("Union Pacific") brings this action against Harris County, Texas ("Harris County"), seeking an injunction to prevent Harris County from constructing a railroad crossing over tracks that are owned and used by Union Pacific and a declaratory judgment with respect to Harris County's right to construct the crossing.  Pending before the court is Defendant Harris County's Motion to Dismiss (Docket Entry No. 5), which argues that dismissal is warranted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).  For the reasons explained below, the motion to dismiss will be denied.

## I.　Factual and Procedural Background

### A.　Underlying Facts

Union Pacific operates and maintains a railroad-track segment known as the Eureka Subdivision ("Eureka Sub"), which extends from

the outskirts of Houston northwest to Navasota, Texas.[1]  A portion
of the Eureka Sub runs through Harris County, adjacent to Highway
290.[2]  Union Pacific uses the Eureka Sub primarily to facilitate
the movement of two types of trains out of Houston:  (1) manifest
trains, which carry virtually any type of commodity, including
dangerous chemicals, and (2) unit-rock trains, which carry rock
from quarries to various delivery points.[3]

Union Pacific also uses a portion of the Eureka Sub for
staging operations in which a train is moved to a section of track
and stopped to allow for the movement of another train.[4]  Under the
existing conditions the Eureka Sub has a portion of track
stretching over 13,000 feet between House Hahl Road and Fairfield
Road that is devoid of railroad crossings, making it an optimal
location for staging operations.[5]  The existing conditions also

---

[1]Affidavit of Dale R. Hill, Exhibit A to Plaintiff Union
Pacific Railroad Company's Response to Defendant Harris County's
Motion to Dismiss ("Union Pacific's Response"), Docket Entry
No. 12, ¶ 4; Affidavit of Jimmy Carter, Exhibit D to id., ¶¶ 2-3.

[2]See Affidavit of Jimmy Carter, Exhibit D to Union Pacific's
Response, Docket Entry No. 12, ¶ 8, 12.

[3]Affidavit of Jimmy Carter, Exhibit D to Union Pacific's
Response, Docket Entry No. 12, ¶ 3, 10-11.

[4]Id. ¶ 4.

[5]See id. ¶¶ 4-7.  Union Pacific asserts that it can only
conduct efficient staging operations if the section of track used
for staging spans, at a minimum, between 9,000 and 10,000 feet
without crossings.  Affidavit of Dale R. Hill, Exhibit A to Union
Pacific's Response, Docket Entry No. 12, ¶¶ 12-13.  Additional
crossings could require Union Pacific to split the trains when

allow for the construction of a "siding," or support rail, that would facilitate Union Pacific's plans to employ longer unit-rock trains to meet increasing customer demands.[6]

Harris County, as part of a roadway expansion project,[7] intends to construct railroad crossings at several points along Union Pacific's Eureka Sub, including where the track intersects with Mason Road (the "Mason Road crossing").[8]  The Mason Road crossing is designed to be an "at-grade crossing," which means that vehicles will cross the tracks at the same level on which the tracks are located, as opposed to traveling over or under[9] the railroad tracks.[10]  According to Harris County's plans the Mason Road crossing will span six traffic lanes (four through lanes and

moving them for staging.  See ¶ 13.

[6]Id. ¶ 11; see also Affidavit of Dale R. Hill, Exhibit A to Union Pacific's Motion, Docket Entry No. 12, ¶ 15.

[7]Declaration of Shannon Watson, Docket Entry No. 19, ¶ 3.

[8]See Declaration of Gene A. Davis in Support of Harris County's Reply to Response to Motion to Dismiss ("Declaration of Gene A. Davis"), Docket Entry No. 17, ¶ 4; Affidavit of Jimmy Carter, Exhibit D to Union Pacific's Response, Docket Entry No. 12, ¶ 8.

[9]A railroad crossing that directs traffic over or under the tracks is called a "grade-separated" crossing.  See Affidavit of Dale R. Hill, Exhibit A to Union Pacific's Response, Docket Entry No. 12, ¶ 17.

[10]Declaration of Gene a. Davis, Docket Entry No. 17, ¶ 5.

two turning lanes) and will be equipped with an electronically operated four-quad gate system to warn drivers of oncoming trains.[11]

B.  **Harris County's Acquisition of a Perpetual Easement**

It is undisputed that Harris County possesses a perpetual easement for the property on which the proposed Mason Road crossing would be situated, including the necessary portion of Union Pacific's track.  The Harris County Commissioners Court passed an order declaring that such an easement was warranted by public necessity,[12] but Harris County and Union Pacific were unable to reach an agreement with respect to the price of the land and the specifications of the crossing.[13]  Harris County subsequently initiated a condemnation action against Union Pacific in the Harris County Civil Court at Law on April 5, 2010, seeking (1) the appointment of three special commissioners to determine the appropriate value of the condemned property, (2) a writ of possession of the condemned property upon payment for the property,

_____

[11]See id. ¶ 8.

[12]Plaintiff's Original Petition in Condemnation, Exhibit A to Defendant Harris County's Motion to Dismiss ("Harris County's Motion"), Docket Entry No. 5, pp. 1–2.

[13]Each party contends that the other was responsible for ending negotiations.  See Declaration of Jennifer Gonzales in Support of Harris County's Reply to Response to Motion to Dismiss ("Declaration of Jennifer Gonzales"), Docket Entry No. 20, ¶ 5; Declaration of Dale R. Hill, Exhibit A to Union Pacific's Response, Docket Entry No. 12, ¶ 18.

-4-

and (3) a declaration that Harris County is the owner of the interest in the condemned property.[14]

On August 27, 2010, after neither party filed timely objections to the findings of the court-appointed special commissioners, the county court at law issued a final judgment that (1) ordered Harris County to pay Union Pacific $10,446 for the condemned property; (2) divested Union Pacific of and vested Harris County with a perpetual easement "for road purposes" "in, to, on, over, across and under" the condemned property, which included the portion of Union Pacific's track necessary to facilitate the Mason Road crossing; and (3) ordered a writ of possession to be issued in favor of Harris County.[15]

## C.   Procedural Background

Union Pacific brought this action seeking (1) a "preliminary injunction to prevent Harris County from proceeding with the construction of an unapproved railroad crossing at Mason Road or otherwise interfering with Union Pacific's operations on the Tract of land described in [the Final Judgment vesting Harris County with a perpetual easement]" and (2) a declaratory judgment that

---

[14]See Plaintiff's Original Petition in Condemnation, Exhibit A to Harris County's Motion, Docket Entry No. 5, pp. 1-3.

[15]Final Judgment on the Award, Exhibit A to Union Pacific Railroad Company's Original Complaint ("Union Pacific's Complaint"), Docket Entry No. 1, pp. 1-2.

"[Harris County] may not interfere with Union Pacific's operations on the condemned tract without Union Pacific's consent or the approval of the proposed crossing by the Surface Transportation Board."[16]

Union Pacific alleges that the court has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under a federal statute, the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"),[17] 49 U.S.C. § 10101 et seq.[18] Union Pacific alleges that because the ICCTA grants the Surface Transportation Board ("STB") "exclusive jurisdiction over actions regulating or interfering with rail carrier transportation or the construction or operation of rail tracks or facilities," the ICCTA preempts the issue of whether Harris County's property rights derived from its perpetual easement include the right "to build a complex railroad crossing" of its choosing, "irrespective of federal requirements or coordination with Union Pacific's safety standards and commercial necessities."[19]  Union Pacific further alleges that Harris County's

---

[16]Union Pacific's Complaint, Docket Entry No. 1, ¶ 13, 19.

[17]The ICCTA, Pub. L. No. 104-88, 109 Stat. 803 (1995), abolished the Interstate Commerce Commission ("ICC"), created the STB, transferred to the STB the ICC's remaining regulatory authority, and provided that ICC precedent applies to the STB. N. Am. Freight Car Ass'n v. Surface Transp. Bd., 529 F.3d 1166, 1169 n.2 (D.C. Cir. 2008).

[18]Union Pacific's Complaint, Docket Entry No. 1, ¶ 4.

[19]See id. ¶¶ 4-6, 8.

proposed Mason Road crossing will "interfere[] with Union Pacific's construction and operation of its railroad" and will "create[] unnecessary and undue safety risks."[20]

Harris County seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Harris County's proposed plan to exercise its state-law property rights is not preempted because it only incidentally affects railroad transportation under these circumstances and because it does not impede or interfere with Union Pacific's rail operations, pose an undue safety risk, or otherwise unreasonably burden rail transportation.[21]   Alternatively, Harris County (1) moves for judgment on the pleadings under Federal Rule 12(c) on grounds that Union Pacific's claims are barred under the doctrine of res judicata because it could have raised them as a defense in the condemnation proceeding but failed to do so, and (2) argues that the court should exercise discretion and dismiss Union Pacific's claim for a declaratory judgment.[22]

---

[20]Id. ¶¶ 9-10.

[21]See Harris County's Motion, Docket Entry No. 5, ¶¶ 14-23.

[22]See id. ¶¶ 29-36.

## II.   Rule 12(b)(1) Motion to Dismiss

**A.   12(b)(1) Standard**

Federal Rule of Civil Procedure 12(b)(1) permits parties to challenge a district court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).  The court must dismiss the action if it finds that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

As the party asserting federal jurisdiction, Union Pacific bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction.  New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 122 S. Ct. 2665 (2002).  The court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011) (quoting Ramming, 281 F.3d at 161).  When a party challenges the court's subject matter jurisdiction based only on the complaint, it is a "facial attack," and the court scrutinizes the pleadings, taking

-8-

the allegations as true, to determine whether the claimant has sufficiently alleged subject matter jurisdiction.  Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980); Santerre v. Agip Petroleum Co., 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999). When a facial attack is involved, "a motion under 12(b)(1) should be granted only if it appears that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief." Santerre, 45 F. Supp. 2d at 566 (quoting Home Builders, 143 F.3d at 1010).

When a party challenges the court's subject-matter jurisdiction based on facts outside the complaint it is a "factual attack," and the court may consider matters that go beyond the pleadings, such as affidavits and testimony. Menchaca, 613 F.2d at 511; Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).  In a factual attack, a court's power to make findings of fact and to weigh the evidence turns on whether the jurisdictional challenge also implicates the merits of the plaintiff's cause of action. Taylor v. Dan, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003); In re Eckstein Marine Serv., LLC, 2010 WL 3303640, at *1 (S.D. Tex. Aug. 19, 2010).  If the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action, the court is free to consider undisputed facts and to resolve disputed facts "to satisfy itself as to the existence of its power to hear the case." Williamson, 645 F.2d at 413.  In contrast, if a factual

attack on subject matter jurisdiction also implicates an element of the cause of action, the action should not be dismissed "unless the alleged claim is immaterial or is wholly insubstantial and frivolous." Santerre, 45 F. Supp. 2d at 566–67 (quoting Clark v. Tarrant Cnty., Tex., 798 F.2d 736, 742 (5th Cir. 1986)).  In such instances, the motion is better analyzed under Federal Rule 12(b)(6) or Federal Rule 56.  Williamson, 645 F.2d at 415–16.

**B.    Determining Whether the Court Has Subject-Matter Jurisdiction**

Union Pacific alleges two claims for relief.  First, Union Pacific seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 "to prevent Harris County from proceeding with the construction of an unapproved railroad crossing at Mason Road or otherwise interfering with Union Pacific's operations [in the use of its perpetual easement]."[23]  Union Pacific alleges that it is entitled to an injunction because it has "a federally created right to have only one regulator, and not to face regulation or unapproved interference by a county in Texas with ambitious road expansion plans."[24]  Union Pacific further alleges that it has a "substantial likelihood" of establishing that § 10501(b) preempts Harris County's conduct.[25]  Second, Union Pacific seeks a

---

[23]Union Pacific's Complaint, Docket Entry No. 1, ¶ 13.

[24]Id. ¶ 14.

[25]Id. ¶ 15.

declaratory judgment pursuant to 28 U.S.C. § 2201 that under § 10501(b) of the ICCTA "the County may not interfere with Union Pacific's operations on the condemned tract without Union Pacific's consent or the approval of the proposed crossing by the Surface Transportation Board."[26]  Union Pacific alleges that a declaration is necessary to clarify the parties' rights.[27]

Federal subject matter jurisdiction is limited and must be conferred by Congress within the bounds of the Constitution.  Elam v. Kan. City S. Ry. Co., 635 F.3d 796, 802 (5th Cir. 2011) (citing U.S. Const. art. III, § 2).  Union Pacific alleges that its claims invoke federal-question jurisdiction under 28 U.S.C. § 1331, which provides that district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Union Pacific argues that it has met its burden to show that federal-question jurisdiction is present for three reasons, which it argues alternatively:  (1) its claims for declaratory and injunctive relief alleging preemption by the ICCTA necessarily pose a federal question; (2) Harris County's use of its state-law property right to construct the Mason Road crossing will interfere with Union Pacific's railroad operations and future plans, and is therefore expressly preempted by the ICCTA; and (3) Harris County's

---

[26] Id. ¶¶ 16–20.

[27] Id. ¶ 20.

construction will unreasonably burden Union Pacific's railroad operations and create an undue risk of harm, and is therefore impliedly preempted by the ICCTA under the complete preemption doctrine.[28]   Harris County moves to dismiss for lack of subject matter jurisdiction on the basis that (1) its state property rights are not completely preempted, nor expressly or impliedly preempted, by the ICCTA because the proposed Mason Road crossing will only incidentally affect Union Pacific's rail operations and will not create a safety hazard; and (2) Union Pacific's claims do not otherwise raise a federal question.[29]

1.   <u>Whether Union Pacific's Claims for Injunctive and Declaratory Relief on Preemption Grounds Necessarily Establish Federal-Question Jurisdiction</u>

The Declaratory Judgment Act, 28 U.S.C. § 2201, permits federal courts to award declaratory relief, but it does not offer an independent ground for jurisdiction.   <u>TTEA v. Ysleta del Sur Pueblo</u>, 181 F.3d 676 (5th Cir. 1999).   Federal Rule of Civil Procedure 65, which determines the methods and rules pertaining to a court's injunctive power, likewise confers no additional jurisdiction power.   See <u>Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana</u>, 762 F.2d 464, 470 (5th Cir. 1985);

---

[28]<u>See</u> Union Pacific's Response, Docket Entry No. 12, pp. 10-16. The court will address the parties' preemption analysis below.

[29]Harris County's Motion, Docket Entry No. 5, ¶¶ 14-18.

<u>Randall D. Wolcott, M.D., P.A.</u>, 635 F.3d at 767.   Accordingly, Union Pacific must go beyond these authorities to establish federal-question jurisdiction.

To determine whether a plaintiff has established a federal question the court examines the plaintiff's well-pleaded complaint. Under the well-pleaded complaint rule, a suit "arises under" federal law "only when the [claimant's] statement of [its] own cause of action shows that it is based upon [federal law]." <u>Louisville & Nashville R.R Co. v. Mottley</u>, 211 U.S. 149, 29 S. Ct. 42, 43 (1908); <u>see</u> <u>Carpenter v. Wichita Falls Indep. Sch. Dist.</u>, 44 F.3d 362, 366 (5th Cir. 1995) ("A determination that a cause of action presents a federal question depends upon the allegations of the [claimant's] well-pleaded complaint). Because the well-pleaded complaint rule focuses on whether the plaintiff has established federal jurisdiction by affirmatively alleging a federal claim, anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal-question jurisdiction.  <u>Barrois</u>, 533 at 328.

Where, as here, a plaintiff brings a declaratory-judgment claim, courts generally conclude that the well-pleaded complaint rule is satisfied if the declaratory-judgment defendant's potential or threatened coercive action necessarily raises a federal question.  <u>See id.</u> at 329; <u>Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1,

103 S. Ct. 2841, 2851 (1983); <u>Pub. Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 73 S. Ct. 236, 243 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.") (dictum).   The rationale underpinning this rule is that a plaintiff should not be permitted to evade the well-pleaded complaint rule by using the declaratory-judgment remedy to recast what is in essence an anticipated federal defense as an affirmative claim for relief under federal law.   <u>See</u> <u>Barrois</u>, 533 F.3d at 329.

Union Pacific argues, however, that the court can forego an analysis of the character of Harris County's potential coercive action because Union Pacific's claims for injunctive and declaratory relief on preemption grounds necessarily present a federal question.[30]   Support for this contention begins with the well-settled principle that a plaintiff may invoke federal-question jurisdiction through a claim for injunctive relief that seeks to restrain state officials from enforcing allegedly unconstitutional enactments or regulations.   <u>See, e.g.</u>, <u>Ex parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 447-48 (1908) (holding that a claim seeking to enjoin a state official from enforcing allegedly unconstitutional

---

[30]Union Pacific's Response, Docket Entry No. 12, p. 10.

state enactments raises a federal question); <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 103 S. Ct. 2890, 2899 n.14 (1983) (concluding that employers' claims for declaratory and injunctive relief against state officials invoked federal-question jurisdiction because they sought to restrain the enforcement of an allegedly unconstitutional state statute).

Based on this precedent, many courts, including the Fifth Circuit, have concluded that the situation is no different when the theory of the unconstitutionality of a state enactment arises from the preemptive effect of the Supremacy Clause.[31]  <u>See, e.g.</u>, <u>Barrois</u>, 533 F.3d at 329 (concluding that a claim for injunctive relief to enjoin state officials from enforcing allegedly preempted state regulations can form the basis for federal jurisdiction); <u>Planned Parenthood of Houst. & Se. Tex. v. Sanchez</u>, 403 F.3d 324, 331 (5th Cir. 2005) ("It is well-established that the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief."); <u>Gillis v. Louisiana</u>, 297 F.3d 755, 760 (5th Cir. 2002) (holding that the plaintiff's claim against a state and state officials to enjoin the alleged regulation of pilotage on preemption grounds necessarily invoked federal-question jurisdiction); <u>Braniff Int'l, Inc. v.</u>

---

[31]The Supremacy Clause provides that the Constitution and laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.

<u>Florida Pub. Serv. Comm'n</u>, 546 F.2d 1100, 1102, 1106 (5th Cir. 1978) (holding that the plaintiff's claims for declaratory and injunctive relief, which alleged that a state's conduct was unconstitutional because it violated the Supremacy Clause, raised a federal question even though the claims also may have been raised as a defense to the state's potential coercive action); <u>Stone & Webster Eng'g Corp. v. Ilsley</u>, 690 F.2d 323 (2d Cir.) (holding that the plaintiff's claims for declaratory and injunctive relief, which alleged that a state statute was completely preempted by ERISA, invoked federal-question jurisdiction because a federal right was asserted on the face of the complaint), <u>aff'd sub. nom.</u>, <u>Arcudi v. Stone & Webster Eng'g Corp.</u>, 103 S. Ct. 3564 (1983).

A frequently cited authority for this theory of federal-question jurisdiction is the Supreme Court's ruling in <u>Shaw</u>, in which various employers brought separate federal declaratory-judgment actions against state agencies and officials alleging that two state statutes were preempted by ERISA. <u>Shaw</u>, 103 S. Ct. at 2897. The Supreme Court differentiated the jurisdictional posture in <u>Shaw</u> from that in its opinion in <u>Franchise Tax Board</u>, which was issued on the same day, explaining that:

> . . . <u>Franchise Tax Board</u> was an action seeking a declaration that state laws were not pre-empted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim are pre-empted by ERISA, as well as declarations that those laws are pre-empted.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See Ex parte Young, [23 S. Ct. at 454-55]. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

Id. at 2899 n.14; see also Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1, 469 U.S. 256, 105 S. Ct. 695, 697 n.6 (1985) (concluding that an Eighth Circuit ruling, which held that the plaintiff's invocation of the Supremacy Clause in a claim for declaratory relief did not convert the action into one arising under federal law for purposes of federal jurisdiction under 28 U.S.C. § 1331, was "erroneous" in light of Shaw).

A number of circuits agree with the Fifth Circuit that a plaintiff's claim for injunctive relief against a state official on preemption grounds necessarily raises a federal question. See, e.g., Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1264 n.1 (10th Cir. 2004); Local Union No. 12004, United Steelworkers of Am. v. Mass., 377 F.3d 64, 74 (1st Cir. 2004); Ammex, Inc. v. Cox, 351 F.3d 697 (6th Cir. 2003); Ill. Ass'n of Mortg. Brokers v. Office of Banks & Real Estate, 308 F.3d 762, 765 (7th Cir. 2002); St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the United States Virgin Islands, 218 F.3d 232, 241-42 (3d Cir. 2000).

The fact that the Supreme Court's conclusion in Shaw relied on Ex parte Young is instructive as to the circumstances in which the

-17-

rule applies.   In <u>Ex parte Young</u>, the Supreme Court held that the Eleventh Amendment's sovereign-immunity protection does not extend to state actors engaging in allegedly unconstitutional conduct under color of state law and that federal-question jurisdiction may be invoked to enjoin such officials from enforcing the unconstitutional activity.   <u>See</u> <u>Ex parte Young</u>, 28 S. Ct. at 447-50.   Observing that the rule originated in <u>Ex parte Young</u>, the Fifth Circuit recently concluded that <u>Shaw</u> "clearly establishes a federal right of action against 'state officials' to enjoin the enforcement of preempted state regulations," but pointed out that "Shaw does not address whether a comparable right of action can be asserted exclusively against private parties in the absence of any allegation of state action." <u>Barrois</u>, 533 F.3d at 329-30.   To determine whether <u>Shaw</u> permitted similar actions against private parties, the Fifth Circuit turned to Professor Wright, who explains that:

> On principle it should be held that the rule of these cases is confined to actions to which state officials are parties.   The best explanation of <u>Ex parte Young</u> and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution and laws. . . .   That implied right of action does not reach to a suit by one private party against another and it ought to be held that there is no federal jurisdiction of an action for a private party that federal law has preempted a duty he would otherwise owe to another private party.

<u>Id.</u> (quoting 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3566).

Accordingly, a plaintiff who seeks injunctive relief on preemption grounds necessarily presents a federal-question in suits against state officials, but not in suits against private parties absent a showing of state action.  Here, Union Pacific brings a claim for injunctive relief on the basis of preemption to restrain Harris County from exercising its general property right to construct its proposed Mason Road crossing.  Union Pacific's claims are distinguishable from those in the precedents outlined above. Numerous authorities both in and outside of the Fifth Circuit have adopted the rule that jurisdiction can stem from an injunctive- or declaratory-judgment claim alleging that state action is preempted under the Supremacy Clause, but a prerequisite for jurisdiction under this doctrine is an allegation that a state official is enforcing or is threatening to enforce a preempted state regulation or statute.  Union Pacific does not present any authority in support of the proposition that a plaintiff necessarily raises a federal question when it brings an injunctive or declaratory claim on preemption grounds and simply names a public entity as a defendant.  The complaint must include an allegation that a statute or regulation or similar regulatory action is preempted.

In Shaw the plaintiffs alleged that the enforcement of a state statute was preempted by ERISA.  Shaw, 103 S. Ct. at 2897.  The plaintiffs in Ex parte Young also complained that the a state statute was unconstitutional because it violated their due process

rights.  Ex parte Young, 28 S. Ct. at 447–50.  The Fifth Circuit authorities following the jurisdictional rule from Shaw and Ex parte Young similarly involved a state or city enactment of some kind that allegedly was preempted by a federal statute.  For example, in Planned Parenthood of Houston, the action sought to restrain the enforcement of a state statute that regulated abortion providers.  Planned Parenthood of Houst. & Se. Tex., 403 F.3d at 330.  In Gillis the plaintiffs brought suit against state officials seeking to enjoin them from enforcing state rulings and enactments.  Gillis, 294 F.3d at 760.  The Fifth Circuit in AT&T Comm'ns v. BellSouth Telecommunications, Inc., 238 F.3d 636 (5th Cir. 2001), upheld the rule set out in Shaw when plaintiffs sought to enjoin state public commissioners from abiding by the commission's arbitration decision.  Id. at 647.  And in CIGNA Healthplan of La., Inc. v. State of La., 82 F.3d 642 (5th Cir. 1996), the rule in Shaw was invoked when the plaintiffs sought a declaration that a state statute was unconstitutional.  Id. at 645 n.1.

In contrast, the court in Barrois concluded that the rule in Shaw was not applicable because the plaintiffs sought a declaration that private landowners could not construct private at-grade crossings by exercising a state property law.  Barrois, 533 F.3d at 329.  Clearly, Harris County is not a private individual, but its use and application of its easement interest is comparable to a right held and exercised by the private party in Barrois, perhaps

more so than to a state statute, ordinance, or similar regulatory device.  Union Pacific is essentially claiming that a public entity's use of a general property right, such as an easement interest, is preempted.  The court concludes that on this record Union Pacific has not presented sufficient evidence or authorities for the court to conclude that Union Pacific's claims invoke federal-question jurisdiction under the rules set out in <u>Shaw</u> and <u>Barrois</u>, or that an exception to the well-pleaded complaint rule is warranted.  <u>See</u> <u>Barrois</u>, 533 F.3d at 329.

### 2.  Whether Union Pacific Has Established Federal-Question Jurisdiction Under the ICCTA

Alternatively, Union Pacific argues that its claims invoke federal-question jurisdiction because they arise under the ICCTA. Union Pacific alleges that § 10501(b) of the ICCTA both expressly and completely preempts Harris County's use of its state-law property right to construct the Mason Road crossing because doing so will interfere with Union Pacific's railroad operations and future plans and will create a safety hazard.[32]  Where a statute contains a specific preemption clause, as does the ICCTA, that clause becomes the focus of the analysis.  <u>Friberg v. Kansas City S. Ry. Co.</u>, 267 F.3d 439, 442 (5th Cir. 2001).

---

[32]Union Pacific's Complaint, Docket Entry No. 1, ¶¶ 4-6.

The jurisdictional and preemption provisions of the ICCTA are found in the same section, which provides in relevant part that:

The jurisdiction of the Board over—

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).[33]

As discussed previously, however, because Union Pacific brings a claim for declaratory relief, the well-pleaded complaint rule requires the court to examine whether Harris County's potential or threatened coercive action necessarily raises a federal question. See Barrois, 533 F.3d at 329. The fact that Union Pacific invokes a federal statute in its declaratory-relief complaint is immaterial. Neither Union Pacific nor Harris County specify what action Harris County would bring to enforce its state-law property right, but as the party asserting jurisdiction, Union Pacific has the burden to show that such an action would raise a federal claim.

---

[33]The "Board" refers to the Surface Transportation Board.

In a state-court action in which Harris County sought enforcement of its easement interest, Union Pacific's preemption defense would not be a basis for federal jurisdiction. Elam, 635 F.3d at 803.

A preemption defense must be distinguished from the concept of "complete preemption." "Defensive" preemption, also known as "conflict preemption" or "ordinary preemption," "simply declares the primacy of federal law, regardless of the forum or the claim" and does not by itself create federal jurisdiction. Elam, 635 F.3d at 803 (quoting Barrois, 533 F.3d at 331). The doctrine of complete preemption, on the other hand, takes what appears to be merely a state-law claim and converts it into a claim "arising under" federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the cause of action is either wholly federal or nothing at all. Id. (citing Barrois, 533 F.3d at 330). Complete preemption has been referred to as a "jurisdictional doctrine" since it allows claims to be removed to federal court. See Barrois, 533 F.3d at 331. "As a general matter, complete preemption is less common and more extraordinary than . . . ordinary preemption." Barrois, 533 F.3d at 331.

Because Union Pacific would be unable to invoke federal jurisdiction solely on a theory of defensive or ordinary preemption, the court must examine whether jurisdiction would be invoked under the doctrine of complete preemption. Under the

-23-

complete preemption doctrine, if a claim is purportedly governed by state law but is in fact governed exclusively by federal law, a claimant's "stated cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction." Vaden v. Discover Bank, 129 S. Ct. 1262, 1273 (2009) (quoting 14B Wright & Miller § 3722.1, p. 511). In determining the nature and reach of preemption, Congress's purpose is the "ultimate touchstone." Elam, 635 F.3d at 803 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S. Ct. 2240, 2250 (1996)). Whether a federal statute preempts state law is a question of law reserved for the court. Franks, 593 F.3d at 407.

In Elam the Fifth Circuit recently described the standard courts should apply when deciding whether state law is completely preempted by § 10501(b) of the ICCTA. "[Section] 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm." Elam, 635 F.3d at 807. In Elam the court concluded that the plaintiffs' negligence per se claim against the defendant railroad company was completely preempted because it arose under a state antiblocking statute, which, according to the court, directly attempted to manage the defendant's switching operations. Id. The court noted that the economic effects of the antiblocking statute were "not merely incidental to an otherwise

valid state law" and distinguished the statute from "state property laws . . . that on their face 'have nothing to do with railroad crossings[.]'"  Id. (quoting Franks, 593 F.3d at 411).  The court further explained that "the ICCTA will not completely preempt valid exercises of a state's police powers in most cases."  Id. (citing Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444, 451 (D.C. Cir. 2010)).

Despite the clear articulation of the complete preemption analysis in Elam, the court is unable to conclude on these facts whether Harris County's potential state-court claim would be completely preempted.  Neither party has addressed the relevant state laws that would apply if Harris County went forward with such a claim.  Because an inquiry into whether jurisdiction is present depends on whether Harris County's potential state-law claims are completely preempted, and thus would require an inquiry into the merits of the action, the court concludes that it would be improper to conduct this inquiry in the context of a Rule 12(b)(1) motion. Williamson, 645 F.2d at 415-16.  The court will therefore accept jurisdiction and not dismiss Union Pacific's claims because the record does not show that they are "wholly insubstantial and frivolous."  Santerre, 45 F. Supp. 2d at 566-67.

### III.  Rule 12(c) Motion for Judgment on the Pleadings

Harris County argues that it is entitled to judgment on the pleadings because Union Pacific's claims could have been raised

during the state-court condemnation proceeding and are thus barred under the doctrine of res judicata.[34]

## A.   12(c) Standard

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings" under Federal Rule of Civil Procedure 12(c).[35]  Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standards as a motion to dismiss under Federal Rule 12(b)(6).  Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir.), cert. denied, 129 S. Ct. 600 (2008).  Rule 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "[A] formulaic recitation of the elements of a cause of action will not do."

---

[34]See id. ¶¶ 26–31.

[35]Harris County filed its Rule 12(c) motion before it filed its answer, but because Union Pacific does not raise a timeliness objection and because Rule 12(c) motions are governed by the same standards that govern Rule 12(b)(6) motions, the court will address Harris County's motion.

Twombly, 127 S. Ct. at 1965.  Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense appears on the face of the pleadings.  Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex., 20 F.3d 1362, 1366 (5th Cir. 1994); In re Dynegy, Inc. Sec. Litig., 339 F. Supp. 2d 804, 819 (S.D. Tex. 2004).

The affirmative defense of res judicata may be considered by the court under certain circumstances in the context of a Rule 12 motion.  See Larter & Sons, Inc. v. Dinkler Hotels Co., 199 F.2d 854, 855 (5th Cir. 1952) ("With respect to a specific affirmative defense such as res judicata, the rule seems to be that if the facts are admitted or are not controverted or are conclusively established so that nothing further can be developed by a trial of the issue, the matter may be disposed of upon a motion to dismiss[.]"); Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989) (holding that a motion to dismiss was sufficient to raise the defense of issue preclusion); Sunny Corral Mgmt., LLC v. Zurich Am. Ins. Co., 2009 WL 464220, at *2 n.2 (N.D. Tex. Feb. 24, 2009) (concluding that the court was not barred from considering a res judicata defense in the context of a Rule 12 motion).

A Rule 12(b)(6) motion requires the court to "accept the plaintiff's well-pleaded facts as true and [to] view them in the light most favorable to the plaintiff." Chauvin v. State Farm Fire & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007) (citing

-27-

Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004)).   In reaching its conclusion "the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken," United States ex. rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003), including "[m]atters of public record [and] items appearing in the record of the case," Meador v. Oryx Energy Co., 87 F. Supp. 2d 658, 661 (E.D. Tex. 2000); see also Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 n.14 (5th Cir. 1997) (incorporating by reference the district court's 12(b)(6) analysis, which determined that the court could take judicial notice of the contents of public records).

A district court may also consider certain documents that the defendant attached to the motion to dismiss.  See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).  But the Fifth Circuit has "restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." Scanlan v. Tex. A & M Univ., 343 F.3d 533, 536 (5th Cir. 2003) (citing Collins, 224 F.3d at 498-99); see also Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

**B.**   **The Doctrine of Res Judicata**

"In determining the preclusive effect of a prior state court judgment, federal courts must apply the law of the state from which the judgment emerged." Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1096-97 (5th Cir. 1995); see Lafreniere Park Found. v. Broussard, 221 F.3d 804, 808 (5th Cir. 2000).  Here, the final judgment in the condemnation proceeding emerged from a Texas county court at law.[36] In Texas, the doctrine of res judicata, or claim preclusion, "prevents the relitigation of a claim or cause of action that has been finally adjudicated" in a prior suit, Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992), and also prevents the litigation of causes of actions or defenses that should have been raised in a prior suit, see id. (citing Gracia v. RC Cola-7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex. 1984)); see also State & Cnty. Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001). The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery.  Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007) (citing Barr, 837 S.W.2d at 629).

---

[36]With respect to claim preclusion, the Fifth Circuit, like the Texas Supreme Court, has adopted the transactional approach of the Restatement (Second) of Judgments.  See, e.g., Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005); Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395 (5th Cir. 2004). The court will therefore treat the Fifth Circuit cases cited by the parties as persuasive authority.

Harris County, as the party asserting res judicata, must establish the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) that the parties or those in privity with them are the same in both actions; and (3) a second action based on the same claims that were raised or could have been raised in the first action. See Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007) (citing Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996)). Here, the parties do not dispute that the county court of law issued a final judgment in the condemnation proceedings and possessed the jurisdiction to do so, and that the parties in both actions are identical.

Under the "transactional approach" followed by Texas courts and articulated in the Restatement (Second) of Judgments, actions contain the "same claims" if the subsequent suit arises out of the same "transaction," or "subject matter," as the prior suit and could have been litigated in the prior suit. See id.; Barr, 837 S.W.2d at 631 ("[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose.") (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). The determination of what constitutes a "transaction" must be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient

-30-

trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." Barr, 837 S.W.2d at 631 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

## C.   Whether Union Pacific's Claims Are Precluded by Res Judicata

Harris County argues that Union Pacific's pending claims arise out of the same transaction as the condemnation proceeding because they are based on the same set of operative facts:  "the County's right to an easement across Union Pacific's trail tracks for the purpose of constructing the proposed Mason Road crossing."[37]

In the county-court condemnation action Harris County alleged that "public necessity" warranted the acquisition of a "perpetual easement" over a tract of property owned by Union Pacific.[38] Harris County alleged that the easement was required "for the

---

[37]Harris County's Motion, Docket Entry No. 5, ¶ 15; Defendant Harris County's Reply to Response to Motion to Dismiss ("Harris County's Reply"), Docket Entry No. 16, ¶ 29.

[38]Plaintiff's Original Petition in Condemnation, Exhibit A to Harris County's Motion, Docket Entry No. 5, pp. 1-2. In deciding whether the condemnation action precludes Union Pacific's claims the court may consider Union Pacific's complaint as well as the final judgment issued by the Harris County Civil Court at Law, which is discussed in and attached to Union Pacific's Complaint. United States ex. rel. Willard, 336 F.3d at 379. In addition, the court will take judicial notice of Harris County's original petition that was filed in the condemnation proceeding. See Funk v. Stryker Corp., 673 F. Supp. 2d 522, 530-31 (S.D. Tex. 2009) (citing Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

location, alignment, construction, operation and maintenance of the public project known as the Mason Road – 4."[39]   Accordingly, the county court at law issued a judgment vesting Harris County with "a perpetual easement for road purposes" and ordering that a "[w]rit of [p]ossession be issued in favor of Harris County."[40]   In addition, based on the damages assessment provided by the court-appointed special commissioners, the court ordered Harris County to pay Union Pacific $10,446 in damages.[41]   See Tex. Prop. Code Ann. § 21.014(a) (requiring the judge of a court in which a condemnation petition is filed to appoint three "special commissioners to assess the damages of the owner of the property being condemned").   In sum, the "subject matter" of the county-court action was Harris County's efforts to acquire an easement and the determination of the appropriate value of the condemned property.

The subject matter of the present action is whether Harris County's proposed railroad crossing is sufficiently safe and unburdensome and whether federal approval of the proposal is required.   Neither the validity of the easement nor the value of

---

[39]Plaintiff's Original Petition in Condemnation, Exhibit A to Harris County's Motion, Docket Entry No. 5, p. 2.

[40]Final Judgment on the Award, Exhibit A to Union Pacific's Complaint, Docket Entry No. 1, pp. 1–2.

[41]See Final Judgment on the Award, Exhibit A to Union Pacific's Complaint, Docket Entry No. 1, p. 1 (adopting the findings of the special commissioners).

the property is at issue in this action. The mere fact that both actions are related to Harris County's expansion plans does not by itself show that the actions share the same subject matter for purposes of res judicata. Moreover, Harris County has not established that Union Pacific was required to assert its preemption defense during the condemnation proceeding. See Barr, 837 S.W.2d at 628.

Notwithstanding the issue of whether the county court at law could have adjudicated Union Pacific's preemption claims, which the court does not decide,[42] the materials the court may consider on a Rule 12(c) motion do not show that at the time of the condemnation proceeding Union Pacific had learned the pertinent details of Harris County's railroad-crossing plan or had time to assess the

---

[42]Union Pacific argues that it could not have asserted its claims in the prior suit because of the limited jurisdiction of the county court at law, Union Pacific's Response, Docket Entry No. 12, p. 17. Union Pacific correctly notes that Harris County civil courts at law have exclusive jurisdiction over eminent domain proceedings, regardless of the amount in controversy, Tex. Gov't Code Ann. § 25.1032(c), but it also argues that the condemnor's right to take the property and the compensation for the party are the only issues that are presented in a statutory condemnation proceeding. The court notes that this may not always be the case. See, e.g., City of Garland v. Mayhew, 528 S.W.2d 305, 307 (Tex. Civ. App.—Tyler 1975, writ ref'd n.r.e.) (holding that the county court at law's jurisdiction "by necessary implication includes the right to try and decide all questions which may arise in such controversies."); In re Burlington N. & Santa Fe Ry. Co., 12 S.W.3d 891, 898 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding [mandamus denied]). Based on the court's conclusion that the condemnation action and the pending action involve different subject matters, however, it need not decide whether the Harris County Court at Law would have had jurisdiction with respect to Union Pacific's preemption defense.

impact the crossing would have on its operations.  Moreover, even if Union Pacific had knowledge of the plan, the factual bases of the two actions are sufficiently unrelated in origin and nature so as to lead the court to conclude that Union Pacific should not have reasonably expected the condemnation proceeding to be its only opportunity to assert its current claims.  See Barr, 837 S.W.2d at 631 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).  The court therefore concludes that Union Pacific's claims are not precluded under the doctrine of res judicata.

**IV.  Harris County's Motion to Dismiss Based on Judicial Discretion**

Harris County argues that the court should exercise its discretion to dismiss Union Pacific's declaratory-judgment claim. The factors a court may consider in deciding whether to abstain from or dismiss a declaratory-judgment claim are (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, (3) whether the plaintiff engaged in forum shopping in bringing the suit, (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, (5) whether the federal court is a convenient forum for the parties and witnesses, and (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.  Travelers Ins.

-34-

<u>Co. v. La. Farm Bureau Fed'n, Inc.</u>, 996 F.2d 774, 776 (5th Cir. 1993).

The court concludes that none of these factors warrant dismissal. Harris County has not offered evidence of a pending state-court action, much less one that will fully litigate the issues in this case. The condemnation proceeding did not litigate these issues and has already resulted in a final award. There is no evidence that this action was precipitated by a threatened lawsuit by Harris County, was preceded by forum shopping on the part of Union Pacific, will be inconvenient for the relevant witnesses and parties, or will hinder the objectives of judicial economy. Harris County has not demonstrated that the adjudication of Union Pacific's claims in this court will result in an inequitable solution relative to a resolution in another forum. The court will therefore deny Harris County's motion to dismiss under the court's discretionary power.

## V. <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that Union Pacific has satisfied its burden to show that the court has subject matter jurisdiction over its claims for injunctive and declaratory relief. In addition, the court concludes that Union Pacific's claims are not precluded under the doctrine of res judicata because they relate to facts that could not have been

-35-

raised during the condemnation proceeding. Lastly, the court concludes that the circumstances do not warrant dismissal of Union Pacific's declaratory-judgment claim under the court's discretionary power. Accordingly, Defendant Harris County's Motion to Dismiss (Docket Entry No. 5) is **DENIED.**

  **SIGNED** at Houston, Texas, on this 17th day of May, 2011.

                SIM LAKE
         UNITED STATES DISTRICT JUDGE